IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICKY WILSON, | ) |
| *Plaintiff,* | ) ) ) No. 19 C 24 |
| v. | ) ) Judge Virginia M. Kendall |
| MICHAEL CARLSON et al., | ) ) |
| *Defendants.* | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ricky Wilson alleges that Village of Broadview Police Officers Michael Carlson and Mark Torres seized, arrested, and injured him without any legal basis, and then falsely stated that they had found heroin and a stolen firearm in Wilson's former residence. Wilson has sued the officers and the Village (collectively "Defendants") for unlawful search and seizure, excessive force, and false arrest under the Fourth Amendment pursuant to 42 U.S.C. § 1983. He also brings state-law claims for malicious prosecution and indemnification.

Defendants have moved to dismiss, arguing that certain counts are time-barred and others have not been sufficiently alleged. (Dkt. 35). The Court agrees that Counts I–III are time-barred and declines to exercise supplemental jurisdiction over the state-law claims.

# BACKGROUND

The following factual allegations are taken from Wilson's second amended complaint and are assumed true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

On August 28, 2014, Wilson purchased a home in Melrose Park, Illinois. (Dkt. 34 ¶ 11). Previously, he had resided with his mother in Maywood, Illinois, and had been her primary caregiver. (*Id.* at ¶ 10). Wilson alleges that his move to Melrose Park drew "hostile attention" because he is African American and made a cash downpayment on the home. (*Id.*). Wilson also alleges that the home purchase, along with a long-ago criminal conviction, drew suspicion from some law enforcement. (*Id.* at ¶ 13).

When one of Wilson's employees was arrested on drug charges, Wilson alleges that the police encouraged the employee to implicate Wilson as being involved in criminal activity. (*Id.* at ¶ 13). On November 19, 2014, Village of Broadview Police Officer Michael Carlson applied for a search warrant and averred that two days prior, he had used official funds to purchase cocaine from Wilson at Wilson's mother's home.[1] (*Id.* at ¶ 14). Wilson states that he did not sell any cocaine and that security footage shows that no one visited the home on the date in question. (*Id.* at ¶¶ 15–16).

On or about November 22, 2014, Officer Carlson and Officer Mark Torres stopped Wilson's vehicle, allegedly without a legal basis. (*Id.* at ¶¶ 18–19). The

---

[1] The complaint for a search warrant that Wilson attached to the second amended complaint provides that Officer Carlson did not himself purchase the cocaine from Wilson, but that he worked with a confidential informant to do so and observed the purchase. (Dkt. 34-1 at 30-32).

officers forcibly removed Wilson from the car and threw him to the ground, injuring him. (*Id.* at ¶¶ 18–19). The officers then arrested Wilson, again allegedly without a legal basis, took him to his mother's home, and demanded that he give them the keys to enter. (*Id.* at ¶ 20). When he refused, the officers unsuccessfully attempted to break down the door. (*Id.* at ¶ 20). The officers then transported Wilson to the Broadview police station and detained him for over two days. (*Id.* at ¶ 21). In the meantime, they searched his mother's home, causing damage in the process, including destroying the security cameras. (*Id.* at ¶ 21).

The officers claimed that, during the search, they found small amounts of heroin packaged for sale. (*Id.* at ¶ 23). Wilson also alleges that the officers removed his mother's prescription medications from their containers and combined them, then claimed that Wilson was selling prescription drugs. (*Id.* at ¶ 23). Wilson alleges that there was, in fact, no heroin in the home, and that the prescription drugs had been legally prescribed to his mother and stored in appropriate containers. (*Id.* at ¶ 24).

On January 20, 2015, Wilson was charged in Cook County Court with possession of heroin and of a stolen firearm. (*Id.* at ¶ 25). The firearm, Wilson says, was not stolen; Wilson was keeping it for a friend with her consent, and it was stored locked. (*Id.* at ¶ 25).

The criminal case lasted for three and half years. (*Id.* at ¶ 29). During discovery in that case, the Broadview Police Department could not substantiate the use of official funds for Officer Carlson's alleged purchase of cocaine from Wilson, nor could they produce the cocaine. (*Id.* at ¶ 17). Officers Carlson and Torres did not show up

to any hearings and never explained why the alleged cocaine purchase from Wilson could not be substantiated. (*Id.* at ¶ 29). Instead, Wilson states, the officers allowed the prosecution to go forward knowing there was no basis for it. (*Id.* at ¶ 29).

In August 2017, the search warrant obtained by Officer Carlson was quashed, and on June 14, 2018, the criminal case was terminated by *nolle prosequi* for lack of evidence. (*Id.* at ¶¶ 30–31).

Wilson states that, shortly after his arrest, he sought to pursue claims for police misconduct, but was told by Broadview's Chief of Police that any action would have to wait until the criminal case was resolved. (*Id.* at ¶ 32). Wilson was given the same advice by attorneys. (*Id.* at ¶ 32). Wilson believed that if he were to sue or file a complaint, it might lead prosecutors to refuse to dismiss his criminal case. (*Id.* at ¶ 32). Wilson, therefore, did not file this suit until after his criminal case was dismissed. (*Id.* at ¶ 32).

As a result of his ordeal, Wilson suffered mental and emotional harm, lost income, and incurred costs to defend his case. (*Id.* at ¶ 34). He was also unable to adequately care for his mother during this period, and her health rapidly declined, leading to her death. (*Id.* at ¶¶ 33–34).

On January 2, 2019, Wilson filed the instant case. (Dkt. 1). He brought three counts under 42 U.S.C. § 1983 for unlawful search and seizure (Count I), excessive force (Count II), and false arrest (Count III). He also brought a claim for indemnification (Count IV), and a state-law indemnification claim (Count V).

Upon a motion to dismiss, this Court dismissed Counts I–III on statute of limitations grounds—the injuries occurred in November 2014, but Wilson did not bring suit until January 2019, far past the two-year limitations period. (Dkt. 18 at 3–4). The dismissal was with prejudice as Wilson could not replead those counts in a manner that would entitle him to relief. (Dkt. 18 at 4).

The Court also dismissed Count V because Wilson had failed to sufficiently allege that the proceedings against him were terminated in his favor, a required element of a malicious prosecution claim. (Dkt. 18 at 4–5). *See Martinez v. City of Chicago*, 900 F.3d 838, 849 (7th Cir. 2018). Because no counts survived the motion to dismiss, the Court also dismissed Count IV, the indemnification claim. (Dkt. 18 at 6).

The Court recruited counsel for Wilson who filed a second amended complaint, realleging the same counts with additional factual allegations. (Dkt. 34). Defendants have again moved to dismiss. (Dkt. 35).

## **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson v. Champaign Cty., Ill.*, 784 F.3d

1093, 1099 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 734 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

### A. Statute of Limitations

Defendants first argue that Counts I–III were dismissed with prejudice and Wilson may not reassert them in his second amended complaint. Wilson responds that, per the doctrine of fraudulent concealment, he should have been afforded additional time in which to bring his claims. Specifically, he alleges that Broadview's Police Chief misled him by stating that any actions pursuing claims of police misconduct would have to wait for resolution of the criminal case. (Dkt. 34 ¶ 32).

Wilson's argument is unsuccessful. "[E]quitable estoppel, also called fraudulent concealment, applies only when plaintiffs act with reasonable diligence to discover and file their claims." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 931 (7th Cir. 2015). This doctrine "prevents a party from asserting the expiration of the statute of limitations as a defense when that party's improper conduct has induced the other into failing to file within the statutory period." *Ashafa v. City of Chicago*, 146 F.3d 459, 462 (7th Cir. 1998); *see also, e.g., In re Copper Antitrust Litig.*, 436 F.3d 782, 790 (7th Cir. 2006) ("The typical example of equitable estoppel is when a defendant promises the plaintiff not to plead the statute of limitations pending settlement talks." (internal quotation marks omitted)). "[I]n order to

invoke equitable estoppel, a plaintiff must show not only misconduct by the defendants, but also that he actually and reasonably relied on the misconduct." *Ashafa*, 146 F.3d at 463.

Wilson's arguments do not meet these requirements. He does not allege misconduct rising to the level of "destruction of evidence or promises not to plead the statute of limitations as a defense," as is necessary. *Id.* at 462. He alleges only that, soon after his arrest, he "sought to pursue claims of police misconduct," but was told by Broadview's Police Chief that "any action in that regard would have to wait for a resolution of the criminal case." (Dkt. 34 ¶ 32). It is not clear from those allegations that the Chief told Wilson that he could not bring a federal civil lawsuit. Even if he had, it is not apparent why Wilson would or should have reasonably relied on that assertion—no one alleges that the Chief was a legal professional.[2] And although Wilson alleges that he feared a civil lawsuit might have repercussions in his criminal case, he does not allege that anyone said as much to him or made any threats. That was his own assessment of the situation, which came with risks.

As this Court previously noted, Wilson knew of his injuries at the time they occurred—when he was pulled over, thrown to the ground, and detained for two days in late November 2014. *(See* Dkt. 18 at 3). Wilson has not sufficiently alleged that Defendants did anything to prevent Wilson from suing so as to merit application of equitable estoppel. The law has been clear for some time that claims like the ones

---

[2] Nor does it appear that Wilson took the Chief at his word, as he also consulted with attorneys, who unfortunately also misadvised him. (Dkt. 34 ¶ 32). Generally, however, "a lawyer's mistake is not a valid basis for. . . equitable tolling." *Wilson v. Battles*, 302 F.3d 745, 748 (7th Cir. 2002).

Wilson sought to bring accrue at the time of injury. *See Woods v. Illinois Dep't of Children & Family Servs.*, 710 F.3d 762, 766 (7th Cir. 2013) (noting that "this court has consistently held that the limitations period applicable to § 1983 actions brought in Illinois is the two-year period for general personal injury actions set forth in 735 ILCS 5/13–202"); *see also Wallace v. Kato*, 549 U.S. 384, 389 (2007) (false arrest claim accrues when the imprisonment ends or when it is pursuant to legal process); *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012) (excessive force claim accrues when the excessive force is used). Wilson failed to timely file and therefore Counts I–III are time-barred.

**B. Remaining State-Law Claims**

This leaves only claims under state law for malicious prosecution and indemnification (Counts IV–V).[3] Having dismissed the only federal claims in this action, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims. 28 U.S.C. § 1367(c)(3); *see also Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016).

---

[3] Wilson does not expressly state that his malicious prosecution claim is brought under state law. His other claims, however, specifically referenced applicable constitutional provisions (Dkt. 34), and he cites cases in his response to the motion to dismiss discussing state-law malicious prosecution claims. *See, e.g.*, Dkt. 41 at 3 (citing *Colbert v. City of Chicago*, 851 F.3d 649 (7th Cir. 2017)). Further, his malicious prosecution claim focuses solely on the institution on legal proceedings (rather than on any detention) for which there is no federal claim. *See Manuel v. City of Joliet, Illinois*, 903 F.3d 667, 670 (7th Cir. 2018) ("There is no such thing as a constitutional right not to be prosecuted without probable cause." (quoting *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013))); *see also, e.g., Brown v. City of Chicago*, No. 18 C 7064, 2019 WL 4694685, at *5 (N.D. Ill. Sept. 26, 2019) ("The Court of Appeals has for many years held that there is no claim under the Constitution for malicious prosecution.").

## CONCLUSION

Defendants' motion to dismiss is granted. This Court previously dismissed Counts I–III with prejudice, and Wilson has not alleged any facts which change the Court's decision to do so. Those Counts are dismissed with prejudice. Counts IV and V are dismissed without prejudice as the Court declines to exercise supplemental jurisdiction over them.

_____
Virginia M. Kendall
United States District Judge

Date: January 29, 2020